UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                      :
CARLOS VELEZ                          :     3:13 CV 171 (JGM)
                                      :
V.                                    :
                                      :
CAROLYN W. COLVIN,                    :
ACTING COMMISSIONER OF                :
SOCIAL SECURITY                       :     DATE: MARCH 8, 2016
                                      :
-------------------------------------------------------x
```

<u>RULING ON DEFENDANT'S OBJECTION TO, AS CONSTRUED AS A MOTION FOR RECONSIDERATION OF, RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER, OR IN THE ALTERNATIVE MOTION FOR REMAND FOR A HEARING, AND ON DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER</u>

On November 23, 2015, this Magistrate Judge filed a Recommended Ruling granting in part plaintiff's Motion to Reverse the Decision of the Commissioner and denying defendant's Motion to Affirm the Decision of the Commissioner (Dkt. #41)["November 2015 Ruling"]. On December 2, 2015, defendant filed an objection to the November 2015 Ruling which, due to the circumstances set forth in detail in this Judge's December 3, 2015 Order Regarding Recent Filings (Dkt. #47), this Court will construe as a Motion for Reconsideration.

Defendant claims the November 2015 Ruling is flawed because it remands the case "for the ALJ to reconsider whether [p]laintiff's prostate problems and upper extremity pain were severe impairments[,]" "for the ALJ to consider additional factors in weighing the opinion of a treating physician[,]" and for the ALJ "to consider opinions given before the relevant period began." (Dkt. #44, at 1).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir.

1992)(internal quotations & citations omitted).

For the reasons stated below, defendant's Motion for Reconsideration (Dkt. #44) is **granted, but the Court still adheres to the conclusions reached in the November 2015 Ruling**.

I. PLAINTIFF'S PROSTATE PROBLEMS AND UPPER EXTREMITY PAIN

A. PROSTATE PROBLEMS

Defendant argues that the November 2015 Ruling is incorrect in its analysis of plaintiff's prostate problems. (Dkt. #44, at 2-4). First, defendant claims that the Court erred by relying upon Cobb v. Astrue, 613 F. Supp. 2d 253 (D. Conn. 2009) "to find that the ALJ should have considered the credibility of [p]laintiff's testimony about the effects of his prostate problems[.]" (Id. at 2). In support of this contention, defendant states that "there was no error in the ALJ's failure to specifically consider the credibility of [p]laintiff's testimony about the effects of his prostate problems[]" because "[i]t was [p]laintiff's burden to prove by medical evidence that his impairment was severe[]" and "[p]laintiff's own complaints are not medical evidence." (Dkt. #44, at 2)(emphasis in original)(citation omitted).

Defendant's brief cites multiple sources to support his claim that plaintiff was required to provide medical evidence to demonstrate that his impairment was severe at the second step of the disability process. (Id.). However, the November 2015 Ruling does not state that the ALJ erred at the second step of the analysis when he found that plaintiff's prostate problems were not a severe impairment; rather, the ruling found that "after the ALJ determined that plaintiff's prostate problems were not a severe impairment, he did not analyze the credibility of plaintiff's testimony about the effects of his prostate problems or consider any limitations caused by this impairment." (November 2015 Ruling, at 42). To the

extent that any aspect of the original ruling was not explicit on this point, the Court now clarifies this issue.

Defendant claims that "the ALJ specifically found that [p]laintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the assessed residual functional capacity ["RFC"] – that is, that any testimony of limitations beyond those assessed in the RFC was not credible[,]" and that plaintiff did not challenge this finding. (Dkt. #44, at 2-3). However, contrary to defendant's assertion, plaintiff's brief specifically stated that the ALJ "failed to properly and consistently evaluate [plaintiff's] credibility[.]" (Dkt. #30, Brief at 3). Additionally, as discussed in the November 2015 Ruling, the ALJ's determination that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms were not credible to the extent that they are inconsistent with the [RFC]" was flawed and required remand. (See November 2015 Ruling, at 41-43).

Here, as in Cobb, the ALJ ignored plaintiff's statements regarding his urinary problems. After plaintiff urinated on himself at the hearing, the ALJ questioned him about the incident and plaintiff explained that he had difficulty holding his urine. (Tr. 1265, 1287-88). In addition to this testimony, plaintiff has a history of frequent urination. (Tr. 562, 760, 795, 811, 937, 943). Despite these records and the testimony from the hearing, there is no evidence that the ALJ considered these symptoms at any point in his decision. When assessing plaintiff's credibility, the ALJ acknowledged plaintiff's claims of prostate problems but made no reference to any symptoms of this condition. Instead, when recounting plaintiff's medical history and analyzing his subjective complaints, the ALJ focused on plaintiff's complaints of pain and ignored his urinary issues. (Tr. 20). It is not sufficient for

an ALJ "to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" Social Security Ruling ["SSR"] SSR 96-7p, 1996 WL 374186, *2 (S.S.A. July 2, 1996). The ALJ's decision provides no explanation for why he chose to discredit plaintiff's testimony that he had difficulty holding his urine, particularly when such testimony was given after plaintiff urinated on himself in public.

Next, defendant argues that the November 2015 Ruling erred by stating that "the medical record documented the limiting effects of [p]laintiff's prostate problems[]" because the "vast majority" of the evidence cited predates plaintiff's alleged onset date and that the evidence after plaintiff's alleged onset date "documents only complaints of pain, receipt of medication, and one instance of blood in [his] urine[.]" (Dkt. #44, at 3)(internal citations omitted).

As an initial matter, even if there was no medical evidence to support plaintiff's alleged symptoms of his prostate problems, that would not excuse the ALJ from completely ignoring this testimony in his credibility determination. Cobb, 613 F. Supp. 2d at 259 ("Even when the Court considers the lack of objective medical evidence on this issue, it cannot conclude that the ALJ's general credibility determination necessarily encompassed a finding as to [the claimant's] claimed urinary needs."), citing SSR 96-7p, 1996 WL 374186, at *4 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all evidence.")(additional citation omitted).

However, in this case, plaintiff's testimony at the hearing was accompanied by

4

medical evidence which demonstrated ongoing difficulties relating to his prostate problems. Contrary to defendant's assertion, the medical records after plaintiff's alleged onset date also include treatment for BPH (Tr. 917, 933, 937, 958) and polyuria (Tr. 937, 943), conditions which can cause incontinence and frequent and excessive urination. Prostate Enlargement/BPH Health Center, http://www.webmd.com/men/prostate-enlargement-bph/features/enlarged-prostate-bph-complex-problem (last visited February 26, 2016); Frequent Urination: Facts on Polyuria in Adults and Children, http://www.emedicinehealth.com/frequent_urination/article_em.htm (last visited February 26, 2016).  "When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce [a plaintiff's] symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated[.]" SSR 96-7p, at *1. Therefore, the ALJ erred by not conducting such an analysis and remand was appropriate.[1]

B. UPPER EXTREMITY PAIN

Defendant claims that the November 2015 Ruling erred by remanding the case to determine whether plaintiff's upper extremity pain was a severe impairment. (Dkt. #44, at 1, 4-5). Defendant states that "Judge Margolis found that the ALJ erred in relying on . . . Dr. Axline's testimony in finding that [p]laintiff did not have a severe right upper extremity impairment because Dr. Axline incorrectly ignored 'numerous' complaints of right upper

---

[1]In this portion of her brief, defendant quotes 20 C.F.R. §§ 404.1512(c), 416.912(c) as stating that "[a claimant] must provide evidence . . . showing your impairment(s) affects your functioning during the time you say that you are disabled . . . ." (Dkt. #44, at 4). Similarly, one of the cases that defendant cites (id. at 3), Mercado v. Astrue, No. 09 CV1576 (CFD)(TPS), 2010 WL 9478984, at *3 (D. Conn. July 26, 2010), also relies upon this regulatory language. As of April 20, 2015, this language no longer appears in the regulation; the revised regulation includes a broader directive that a claimant "submit all evidence known to [him] that relates to whether or not [he is] blind or disabled." 20 C.F.R. §§ 404.1512(c), 416.912(c).

extremity pain in the record[]" and that "substantial evidence supports the ALJ's assessment of [p]laintiff's alleged right upper extremity impairment." (Id. at 4). Specifically, defendant alleges that "[p]laintiff's own complaints do not constitute the required medical evidence of limitations in the ability to do work-related activities[]" and that "[p]laintiff's sporadic complaints of right upper extremity pain do not establish the existence of a severe impairment because they do not establish limitations for twelve consecutive months." (Id. at 5)(emphasis omitted).

As with the decision's analysis of plaintiff's prostate problems, the November 2015 Ruling did not provide that the ALJ erred by finding that plaintiff's upper extremity pain was not severe. Rather, the decision rejected plaintiff's argument that his upper extremity issues were severe, specifically plaintiff's reliance on Dr. Rawner's opinion, and then proceeded to discuss plaintiff's additional arguments regarding his upper extremities. (November 2015 Ruling, at 43-45; see also Dkt. #30, at 13). Again, to the extent that the original ruling was not explicit on this point, the Court now clarifies.

The November 2015 Ruling focused on errors that were made in the testimony of the medical expert, Dr. Axline, at the hearing on April 9, 2012,[2] and how those errors effected the ALJ's credibility determination and RFC analysis. (Dkt. #41, at 45 ("Because the ALJ assigned great weight to Dr. Axline's opinion, upon remand, the ALJ shall consider any additional limitations caused by plaintiff's right upper extremity impairments when

---

[2]As explained in the original ruling, at the April 9, 2012 hearing, Dr. Axline testified that plaintiff first complained of problems in his right shoulder on August 17, 2011 and that this was the only instance of plaintiff complaining about his shoulder. (Tr. 1267-68). Dr. Axline also testified that other than a test performed in October 2011, he had "no other records made of complaints to the right wrist or hand."(Tr. 1277-78). Dr. Axline was incorrect on both of these points as the record shows that plaintiff had earlier complaints of pain in his shoulder (Tr. 652, 655, 1218) and in his wrist (Tr. 939-40, 945, 1075, 1143).

formulating plaintiff's RFC.")(emphasis added)(internal citations omitted)). The Court agrees that the ALJ's conclusion that plaintiff's alleged right shoulder and right hand pain did not significantly limit his ability to perform basic work activities for twelve consecutive months was supported by substantial evidence. (Tr. 17). However, "in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Despite Dr. Axline's incorrect testimony about the frequency and treatment of plaintiff's right upper extremity issues, the ALJ assigned "great weight" to Dr. Axline's testimony. (Tr. 24-25). Therefore, the November 2015 Ruling did not err by directing the ALJ to reconsider the limitations and restrictions imposed on plaintiff by this impairment when formulating plaintiff's RFC upon remand.

## II. DR. BARKIL-OTEO'S OPINION

Defendant claims that the November 2015 Ruling erred by remanding the case for reconsideration of the opinion of plaintiff's treating physician, Dr. Barkil-Oteo. (Dkt. #44, at 1, 5-8). According to defendant, the ALJ was not required to "explicitly consider every factor potentially relevant to a treating physician's opinion, and . . . the ALJ gave good reasons for rejecting Dr. Barkil-Oteo's opinion." (Id. at 5-6). Specifically, defendant claims that the ALJ properly assigned this opinion "little weight because it was not supported by any clinical findings, it was inconsistent with and unsupported by therapy treatment notes, and it was internally inconsistent." (Id. at 6).

Defendant's arguments misrepresent the Court's November 2015 Ruling. First, contrary to what defendant states, the November 2015 Ruling never suggested that an ALJ is required to explicitly discuss each of the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c).

(Id.). Rather, the Ruling, after listing the factors an ALJ is required to consider, accurately summarized:

> "After considering the above factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" Burgess, 537 F.3d at 129, quoting Halloran, 362 F.3d at 33; see 20 C.F.R. § 404.1527(c)(2)(stating that the agency will "always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion"). "The requirement for reason-giving exists, in part, to let claimants understand the disposition of their cases, even- and perhaps especially- when those dispositions are unfavorable[]" because a claimant is entitled to know the reasons why the Commissioner disagrees with the opinion of his physician concerning his disability. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

(November 2015 Ruling, at 47-48). The Ruling then found that the ALJ had erred, not because he did not explicitly discuss each factor, but because he did not "consider all of these factors and comprehensively set forth his reasons for the weight he assigned[.]" (Id. at 48).

As quoted in the original Ruling (id. at 47), and as defendant acknowledges (Dkt. #44, at 6), when analyzing a treating source's opinion, an ALJ must consider:

> (i) the frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

See 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, it is clear that the ALJ did not consider the frequency of the examination and the length, nature, and extent of the treatment relationship. See 20 C.F.R. §§ 404.1527(c)(2)(i) - (ii), 416.927(c)(2)(i) - (ii). As defendant concedes, the ALJ incorrectly attributed Dr. Barkil-Oteo's opinion to plaintiff's social worker. (Dkt. #44, at 5, n.1). Therefore, as explained in the original Ruling, when weighing this opinion, the ALJ could not have taken into consideration the fact that Dr. Barkil-Oteo had

been treating plaintiff since 2006. (November 2015 Ruling, at 48, n.25 ("Most striking is the fact that the ALJ did not address the fact that Dr. Barkil-Oteo claims to have been treating plaintiff since November 27, 2006.") citing 20 C.F.R. § 404.1527(c)(2)(i)("[g]enerally, the longer a treating source has treated you . . ., the more weight we will give to the source's medical opinion.")). Because the ALJ believed that this opinion was provided by plaintiff's social worker, he could not have considered the length, nature, and extent of Dr. Barkil-Oteo's treatment relationship with plaintiff when he decided to afford the opinion little weight. See 20 C.F.R. §§ 404.1527(c)(2)(i) - (ii), 416.927(c)(2)(i) - (ii). Similarly, because the ALJ was mistaken about the source of the opinion, he could not have considered whether the opinion was from a specialist. See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Defendant argues that "[t]he ALJ's rejection of this opinion as unsupported by any clinical findings, inconsistent with and unsupported by treatment notes, and internally inconsistent amply demonstrates that the proper analysis was undertaken in this case." (Dkt. #44, at 6). This argument does not address the issue raised in the November 2015 Ruling that, because the ALJ believed that the opinion came from a social worker and not plaintiff's treating physician, he did not comply with his duty to consider all of the 20 C.F.R. §§ 404.1527(c), 416.927(c) factors. Additionally, this argument does not consider the other erroneous reasons, as explained in the November 2015 Ruling, that the ALJ relied upon in his decision to assign the opinion little weight. (See Tr. 25). These errors include that the ALJ incorrectly believed the opinion was not from a treating source and therefore not entitled to any special significance, and that he incorrectly believed that the opinion did not come from an acceptable medical source. (November 2015 Ruling, at 46-47).[3] Therefore, it was proper

---

[3]As stated supra, defendant does not object to the November 2015 Ruling's determination that the opinion did not concern an issue reserved for the Commissioner (Dkt. #44, at 6, n.2), and

to remand the case for reconsideration of Dr. Barkil-Oteo's opinion.

### III. REMAND ORDER

Finally, defendant objects (Dkt. #44, at 1, 8-9) to the November 2015 Ruling's instruction that the ALJ, upon remand, should consider the January 2007 opinions of Drs. Rawner and Kaplan and "explain whether plaintiff's capabilities have changed since the time of these opinions." (November 2015 Ruling, at 48-49).

The procedural history in this case, as set forth in greater detail in the November 2015 Ruling, is unusual. (Id. at 1-4, 48-49). After initially receiving an SSI Notice of Award on March 6, 2007 (Tr. 314-31; see also Tr. 332-49 (in Spanish)), on September 4, 2007, the SSA issued a Disability Determination and Transmittal concluding that plaintiff was not disabled and therefore not entitled to DIB or SSI benefits. (Tr. 31-32). After plaintiff appealed this decision, the action was voluntarily remanded with instructions for an ALJ to obtain evidence from a medical expert to clarify plaintiff's physical impairment, to give further consideration to the opinions of plaintiff's treating and examining sources, and to review whether plaintiff has a severe physical impairment. (Tr. 71-73). At a hearing on April 9, 2012, plaintiff amended his alleged onset date to September 7, 2009; subsequently, the ALJ's decision found that this change rendered the issues in the remand order to be "somewhat moot[]" and determined that his decision was "essentially a new hearing with new evidence presented as of September 7, 2009." (Tr. 14; see also Tr. 1230). Plaintiff then argued that the ALJ's failure to follow the remand order was error. (Dkt. #30, at 16-17). The November 2015 Ruling acknowledged that Drs. Rawner's and Kaplan's opinions occurred before the revised alleged onset date of disability, but instructed the ALJ to consider them upon

---

that the ALJ erred by attributing the opinion to a social worker instead of plaintiff's treating physician (id. at 5, n.1).

remand. (November 2015 Ruling, at 49).

"[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." Carway v. Colvin, No. 13 Civ. 2431 (SAS), 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014)(footnote omitted). However, such evidence can have some probative value and a Court does not err by requiring the ALJ to consider it after remanding the case on other grounds. Briscoe v. Astrue, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012)(finding that the ALJ did not err by not referencing an evaluation from before the alleged onset date but instructing an ALJ that "since the case is being remanding anyway, the ALJ should make clear the relevance of this evidence to his decision[]"), citing Folio v. Astrue, No. CV 06-2700-PHX-EHC, 2008 WL 3982972, at *6 (D. Ariz. Aug. 20, 2008); see also Crouch v. Astrue, No. 5:11 CV 820 (LEH/EJH), 2012 WL 6948676, *10, n.17 (N.D.N.Y. Dec 31, 2012)(noting that evidence that predates the relevant time period is "mixed in its import as to [a claimant's] functional limitations[]"), approved over objection, 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013). While the Court does not hold that evidence that predates an alleged onset date is usually relevant, in this case, however, because of this Court's conclusion remanding on other grounds, and because of the unique procedural history of this case, the Court did not err by instructing the ALJ to consider these opinions on remand.

## IV. CONCLUSION

For the reasons stated above, defendant's Motion for Reconsideration (Dkt. #44) is **granted, but the Court still adheres to the conclusions reached in the November 2015 Ruling**. Accordingly, the case shall be remanded, and judgment shall enter in plaintiff's favor. The Clerk shall close the case.

Dated at New Haven, Connecticut, this 8th day of March, 2016.

 /s/ Joan G. Margolis, USMJ 
Joan Glazer Margolis
United States Magistrate Judge
